**STATE of Missouri ex rel. Wallace S. PARKER and Lester Williams, Appellants,**

**v.**

**Cole HENDRIX and James M. Halloran, Respondents.**

**No. 24739.**

Kansas City Court of Appeals.

Missouri.

Feb. 5, 1968.

Charles C. Shafer, Jr., Kansas City, for appellants.

Herbert C. Hoffman, City Counselor, Carrol C. Kennett, Asst. City Counselor, Kansas City, for respondents.

HOWARD, Presiding Judge.

This is an appeal from a judgment of the Circuit Court of Jackson County, Missouri, quashing an Alternative Writ of Mandamus sued out by appellants. Both appellants are battalion chiefs in the Kansas City, Missouri, Fire Department. The controversy involves the manner of filling a vacancy in the office of deputy chief in the Kansas City Fire Department. The vacancy occurred on the retirement of Chester W. McGrury on July 22, 1965. Under date of July 12, 1965, procedures were commenced under the merit system of Kansas City, Missouri to fill this vacancy. On such date a "personnel requisition" was sent by the fire department to the personnel department to secure the certification of a roster of those eligible for appointment to this position. The roster certified by respondent Cole Hendrix, the Personnel Director of the City of Kansas City, to respondent James Halloran, Director of the Fire De-

partment of the City of Kansas City, consisted of only three names. It is the contention of appellants that under the applicable provisions of the Charter of Kansas City, it was an absolute requirement that such roster consist of five names and that an appointment from a roster consisting of less than five names was and is void and illegal. Subsidiarily, appellants contend that if it is impossible to secure a roster of five names, the City cannot legally appoint anyone on a permanent basis to fill the position.

Under the normal procedures of the Personnel Department, there has been promulgated a job description for the position of deputy fire chief which sets out the nature of the work to be performed, examples of such work, required knowledge, abilities and skills and minimum training and experience requirements. Under this, any applicant for the position of deputy fire chief must have the following experience and training: "Graduation from a senior high school; and ten years of progressively responsible fire fighting and fire prevention work with the Kansas City, Missouri, Fire Department, including five years experience at the rank of Battalion Chief." This job description introduced in evidence bears the date of February 1964.

In the personnel requisition, the director of the Fire Department had specified that the vacancy in the office of deputy fire chief should be filled by promotion, pursuant to applicable provisions of the Charter. It is noted that under the foregoing minimum qualifications, the position could only be filled from within the ranks of the fire department (or perhaps theoretically by someone who in the past had been a member of the fire department although not currently so employed).

Notice of merit system examination was duly given. The evidence shows that there were only nine people who met the minimum requirements and that all of these held the rank of battalion chief in the Kansas City Fire Department. Of these nine,

seven applied to take the merit system examination for this appointment. Appellant Williams was a battalion chief but did not apply to take the examination. Appellant Parker was a battalion chief and did apply to take the examination. The rules of the personnel department promulgated pursuant to the Charter provide in Section 7.7 concerning merit examinations that: "All competitors may be required to obtain at least a minimum rating in each or any part of the examination in order to receive a final passing grade or to be allowed to participate in the remaining parts of the examination." Pursuant to this rule, the personnel department had established a minimum passing grade for the written portion of the examination for deputy fire chief. Of the seven battalion chiefs who took the written examination, four passed the examination by making scores higher than the minimum required and three failed because their scores were lower than the minimum requirement. Appellant Parker failed the examination. After the written examination was given and before the oral examination could be given, one of the battalion chiefs who passed the written examination died. The remaining three battalion chiefs who had passed the written examination were given the oral examination and all three and only these three were placed upon the register of those eligible for appointment to the job of deputy fire chief and such register consisting only of these three names was certified to the appointing authority, respondent James M. Halloran, Director of the Kansas City, Missouri, Fire Department. From this register respondent Halloran appointed John H. Waas to the position. He ranked first in the examination. It is this appointment of Waas that appellants are contesting as being illegal and void and in violation of what is claimed to be the mandatory provisions of the Charter of Kansas City, Missouri.

The City Charter of Kansas City provides for appointments to vacancies in Section 119 and for the filling of vacancies by promotion in Section 121. The applicable portions of these sections are as follows:

"Sec. 119. Appointments. When any position in the classified service is to be filled, the appointing authority shall notify the personnel director of that fact and the personnel director, after notice to the persons to be certified, shall certify to such authority the names and addresses of candidates on the eligible list for the class or grade to which such position belongs as follows: (a) for position in divisions 'A' and 'C', five (5) names of persons having highest ratings on the eligible list, plus two additional names with next highest ratings for each similar position to be filled if more than one; provided, however, that if any of those whose names are so certified do not appear for interview by the appointing authority, the personnel director, on request of the appointing authority, shall certify additional name or names having the next highest ratings, to the number of those only who failed to appear as aforesaid; (b) for positions in division 'B' the names of all candidates on the eligible list in order of rating. The appointing authority shall appoint to such position one of the persons whose names are so certified except as otherwise provided in this charter. * * *"

"Sec. 121. Promotions. Whenever practicable, as determined by the head of the department in which a vacancy occurs, vacancies in the classified service shall be filled by promotion. Any advancement in rank shall constitute promotion. When any position in the classified service which may be filled by promotion is to be filled, the appointing authority shall notify the personnel director of that fact, and the personnel director shall certify to such authority the names and addresses of employees of the city who are candidates on the eligible list for the class or rank to which such position belongs, in the order of rating, which list shall be known as the promotional

list. Any appointment from such list of a city employee whose names is not among the five (5) highest in rating on such promotional list, if any, shall be made by the appointing authority only after proper approval thereof, in writing, by the director of personnel."

It is appellants' contention that these two sections must be read together; that the filling of a vacancy by either appointment or promotion amounts to the same thing; that the requirement that the roster of those eligible to fill a vacancy must consist of five (5) names is mandatory and applies regardless of whether the vacancy is filled by appointment or by promotion. Appellants also point to the last sentence of Section 121 as showing that a promotion roster must contain at least five (5) names, the same as a roster for filling vacancies by appointment rather than promotion.

Section 114 of the Kansas City Charter places in the "unclassified service" elective officers, city manager, department heads, boards and commissions, secretaries of officers in the unclassified service, the city clerk, the city auditor, and those performing certain temporary tasks. All other employees are placed in the classified service by Section 115 which divides the classified services into divisions "A", "B", and "C". All parties agree that the job of deputy fire chief is in Division "A".

Section 116 of the Charter empowers the personnel director to promulgate rules relating to the classified service, which rules shall provide, among other things, for the creation of eligible lists of successful candidates in the order of their standing as a result of examination, and the keeping of such lists current. In the instant case, there was no current eligible list and, therefore, examinations were held to create such a list as before noted.

The provisions of Section 119 provide for the filling of vacancies by the appointment of an applicant who need not be presently an employee of the city. For such an appointment, the personnel director is required to certify to the appointing authority "the names and addresses of candidates on the eligible lists for the class or grade to which such position belongs as follows: (a) for position in divisions 'A' and 'C', five (5) names of persons having highest ratings on the eligible list, * * *." No such requirement is found in Section 121 of the Charter dealing with promotions. As to promotions, this section provides that the personnel director shall certify to the appointing authority "the names and addresses of employees of the city who are candidates on the eligible list for the class or rank to which such position belongs, * * *."

It is apparent that these provisions contemplate the existence of a list of people who have taken competitive examinations and thereby qualify for appointment to the vacancy which is to be filled. It is likewise contemplated that this list will contain numerous names, some of whom are city employees and some who are not. In this context, it is provided that where the filling of the vacancy is not limited to promotion that the director of personnel will certify the names of the five people having the highest score, as the roster from which the appointment will be made. On the other hand, where the vacancy is to be filled by promotion, it is contemplated that the director of personnel will pull out from the roster of all of those eligible the names of employees of the city and place them on the roster in the order of the grade they achieved in the competitive examination. There is no requirement that this promotion roster be limited to the top five men. Neither is there any requirement that there must be five men. It is clearly contemplated that all of the city employees on the eligible list will be included in the roster certified to the appointing authority. If this were not so, the last sentence of this section would be meaningless. It will be noted that in Section 119, while the director of personnel is directed to certify a list of five names, this number 5 is clearly a maximum limit which cannot be exceeded unless

there is more than one vacancy to be filled. No such limit applies to the promotion list. The language used covers all city employees whose names are on such list. It may be five, it may be seven, it might be twenty. If the list does, in fact, consist of more than five, then the last sentence of the section prohibits the appointment of an individual on the list whose examination score is not among the five highest, unless and until such appointment is concurred in by the personal director in writing.

From all of this, we conclude that the promotion list under Section 121 of the Charter shall consist of the names of all city employees on the eligible list regardless of number. This may be more than five or it may be less than five.

There is no magic in the number 5. It was chosen by the framers of the Charter to be included in Section 119 concerning appointments. These framers did not see fit to carry this number over to Section 121 which provides for the filling of vacancies by promotion. We cannot read this numerical requirement into Section 121. It will be noted that in Section 119, it is provided that the personnel director shall certify a roster of five names and while this is mandatory language, we note that the whole effect of this section is to place a maximum limit on the number of names on the roster. Whether this is a mandatory minimum number of names, we need not decide in this case.

As the facts of this case demonstrate, it is not only quite possible but very likely that in the filling of a vacancy in an office requiring skills not normally possessed by members of the general public, there might be instances wherein five applicants meeting the minimum qualifications could not be secured. In the case at bar, the evidence is that there were only nine individuals who possessed the necessary qualifications. Two of these decided for reasons of their own not to become applicants. They cannot be forced to become applicants. Three of the applicants failed

to attain a passing mark on the written examination. The setting of a minimum score for a passing grade on an examination, or a part thereof, is specifically authorized by the rules of the personnel department of the City of Kansas City and this procedure is not here challenged. Therefore, we cannot require that the personnel director place on the roster from which the appointment is to be made, the names of those who have not passed the merit examination. One of those who passed the written examination died before the oral examinations were held. Thus, we have only three men who possess the minimum qualifications and who passed the merit system competitive examination. To say that under such circumstances no legal roster could be certified by the personnel director and the City was thereby powerless to fill the vacancy in the office of deputy fire chief would closely approach the absurd. We will not impose any such unreasonable requirements upon the city unless we are required to do so by the clear and unambiguous wording of the applicable Charter provisions. As heretofore indicated, we are not so required. On the contrary, we are convinced that under the provisions of Section 121 of the Kansas City Charter, the personnel director was authorized and required to include in the roster of those eligible, which he certified to the appointing authority and from which this vacancy was to be filled by promotion, all of the employees of Kansas City who possessed the minimum qualifications and who had passed the competitive merit system examination. All of such names are to be included on the roster whether the total number exceeds five or is less than five.

Appellants contend that a city possesses only those powers which it is authorized to exercise by its Charter, be that Charter legislative or constitutional. They assert that in this instance the city only has power to fill the vacancy from a roster containing five names. We have no quarrel with this general proposition of law or the authorities cited. However, we are not dealing

with the exercise of a power by a city; we are merely dealing with provisions of the Charter directing how such powers shall be exercised. The city has power to employ firemen. That is not questioned. The provisions here under consideration merely determine how this power is to be exercised.

In support of their position, the respondents have cited cases from other states holding that matters of "appointment" and "promotion" are two different things and that one is not governed by the provisions which are applicable to the other. These cases do not set out the statutory provisions which they construe and our decision must be based on the provisions of the Charter of Kansas City. Therefore, while we do not disagree with the decisions so cited, we do not rely thereon.

Finding no error in the trial below and being convinced that the judgment of the trial court quashing its preliminary writ of mandamus was proper, such judgment is hereby affirmed.

CROSS, J., and R. KENNETH ELLIOTT, Special Judge, concur.

MORGAN, J., not participating because not a member of the court when the cause was submitted.